UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JULIE R., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:18-cv-00394-JDL |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the December 27, 2017 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level fibromyalgia, and no other severe impairment. (*Id.* ¶¶ 3, 4.) According to the ALJ, Plaintiff retains the residual functional capacity (RFC) to perform light-exertion work, except she is limited as to certain postures. (*Id.* ¶ 5.) The ALJ further determined that Plaintiff's RFC enables her to perform past relevant work as a reservations agent and, alternatively, other work existing in significant numbers, including the representative jobs of laundry folder, garment folder, and office helper. (*Id.* ¶¶ 5, 6.) The ALJ thus found Plaintiff not disabled during the relevant period. (*Id.* ¶ 7.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS,* 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues the ALJ erred when she (A) failed to address and find the additional severe impairments of bilateral tendinitis, obesity, and PTSD; (B) failed to evaluate properly whether Plaintiff's bilateral tendinitis and fibromyalgia constitute a listing or reduce Plaintiff's RFC; (C) mischaracterized the reservations clerk job as past relevant work; (D) failed to call a medical expert to testify at the administrative hearing (allegedly judging matters entrusted to experts as a consequence); and (E) relied on an unsupportable RFC to conclude that Plaintiff could perform other substantial gainful activity.

### A. Step 2 – Omitted Impairments

Plaintiff contends her RFC is reduced by bilateral tendinitis, obesity, and PTSD. Plaintiff more specifically argues the ALJ failed to address the bilateral tendinitis, which Plaintiff maintains is the reason she had to leave her employment.

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an

impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. See also Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted). A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2 (Jan. 23, 2009), *aff'd*, 2009 WL 361193 (D. Me. Feb. 12, 2009).

If error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding. *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 1:09–cv–00220–JAW, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error

4

would necessarily change the outcome of the plaintiff's claim.")).

    *1. Tendinitis*

The records generated as the result of Plaintiff's treatment with Windham Family Practice in July 2013 reflect a history of upper extremity pain associated with work activity in 2012 and continuing. Plaintiff expressed her intention to leave her work at a restaurant because work activities aggravated her symptoms. (Ex. 11F, R. 623.) A Tramadol prescription for pain management was continued. (R. 624.)

In March 2015, Heather Chase, a nurse practitioner, noted the tendinitis and that Plaintiff would continue with physical therapy, "as great improvement has been appreciated;" she prescribed Gabapentin. (Ex. 11F, R. 585.) In May 2015, NP Chase again noted the tendinitis and prescribed prednisone. (R. 580.) In June 2015, NP Chase did not mention the tendinitis diagnosis, noted arthralgia of multiple sites and myalgia, and prescribed Indomethacin. (R. 571, 574-75.)

In October 2015, Rita Paquin, M.D., considered Plaintiff's complaint of "pain all over body," noted "extensive lab testing which was all negative/normal," made "normal" findings on "inspection/palpation of joints, bones, and muscles," and assessed chronic pain, fibromyalgia, high risk medication use, and depression with anxiety. (R. 558.) Dr. Paquin made a pain management referral and restarted Gabapentin for treatment of fibromyalgia. (R. 559.)

In September 2016, George Stockwell, D.O., noted Plaintiff's history of upper extremity pain and subjective report of having "fibromyalgia and tendonitis." (R. 543.) He referred Plaintiff to rheumatology with a plan to obtain an assessment for fibromyalgia

5

and/or inflammatory arthropathy, with the possible benefit of "rul[ing] out autoimmune or connective tissue disease as her pain is more severe than I would expect for fibromyalgia and some of her joint symptoms are suggestive she is weaning from Nucynta," referencing Plaintiff's course of pain management treatment with Stephen Hull, M.D. (Ex. 11F, R.546-47.) In January 2017, Dr. Stockwell reiterated the plan to treat the fibromyalgia. (R. 537.)

Meanwhile, Dr. Hull, of the Mercy Pain Center, assessed fibromyalgia following a physical examination that included 12 of 18 classic fibromyalgia tender points. (Ex. 9F, R. 480-83.) In March 2016, Dr. Hull supplemented Plaintiff's medications with a trial of Tizanidine and arranged for Plaintiff's participation in a Living Life Well Pain Rehabilitation Program. (R. 479.) During an April 2016 visit, Plaintiff specifically advised Dr. Hull of her tendinitis history, but Dr. Hull continued his assessment of fibromyalgia, and increased the Tizanidine dosage. (R. 474.) In October 2016, Dr. Hull found tenderness "throughout fibromyalgia tender points within the upper body." (R. 445.) By October, Dr. Hull moved Plaintiff to different medications, including Nucynta, Gabapentin, and Methocarbamol. (R. 445.)

The record also includes a functional capacity report following a consultative exam by Ira Stockwell, D.O. (Ex. 6F.) In December 2015, Dr. Stockwell examined Plaintiff's upper extremities and noted that Plaintiff most likely had fibromyalgia with fibromyositis, particularly in the upper extremities (which he found involved actual impairment). (R. 421-22.) In October 2016, Arvind Chopra, M.D., noted the absence of evidence of ongoing symptoms or treatment for tendinitis, and endorsed a physical residual functional capacity assessment that identified Plaintiff's severe physical impairment as fibromyalgia.

6

(Ex. 5A, R. 121, 124-25.) Finally, in a treating source statement, Dr. George Stockwell noted Plaintiff had tendinitis in addition to fibromyalgia. (Ex. 16F.)

While the ALJ did not directly comment on the tendinitis, she acknowledged it in the history and addressed the symptoms in Plaintiff's upper extremities. The ALJ considered the symptoms as part of her assessment of Plaintiff's fibromyalgia. The record supports the finding that the symptoms are caused by fibromyalgia. In fact, Dr. Stockwell's treating source statement supports a finding that fibromyalgia is the principal cause of Plaintiff's physical and mental health symptoms. (R. 658.) The ALJ's finding of fibromyalgia, and not tendinitis, is supportable.

Furthermore, regardless of the source of the symptoms – tendinitis or fibromyalgia – the ALJ addressed the limitations to Plaintiff's upper extremities. The record lacks any reliable evidence to suggest that tendinitis would generate additional or different functional limitations than the ALJ found were caused by the fibromyalgia.

*2. Obesity*

After noting that Plaintiff's obesity does not cause more than minimal functional limitations, the ALJ wrote:

> The claimant is obese, however, there is no indication in the medical records as to what, if any, impact the claimant's obesity has on her ability to perform work-related tasks. There is no evidence that the claimant's weight has resulted in an exacerbation of her co-existing medical conditions, and no treating or examining physician has placed limitations on the claimant's ability to function as a result of obesity.

(R. 24.) Dr. George Stockwell, however, suggested that obesity impairs Plaintiff's ability to go up and down stairs and to walk distances without resting. (R. 658.) Dr. Stockwell

7

opined that Plaintiff can stand/walk for two hours in an eight-hour workday and only for 10-minute durations. (R. 653-54.) In effect, Dr. Stockwell believes that obesity limits Plaintiff to less-than-sedentary levels of exertion in combination with her other impairments.

Titles II & XVI: Evaluation of Obesity, SSR 02–1P (S.S.A. Sept. 12, 2002), provides: "When we identify obesity as a medically determinable impairment ..., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." This Court requires that a disability benefits determination include "an individualized assessment" or "meaningful specification" of the limitations imposed by obesity when the decision maker concludes, at step 2, that obesity is a severe condition; this Court, therefore, will remand for further proceedings without requiring that the claimant demonstrate that the error was not harmless, if a meaningful specification is not provided. *Fothergill v. Astrue*, No. 2:11-CV-247-DBH, 2012 WL 1098444, at *2 (Mar. 29, 2012), *recommended decision adopted*, 2012 WL 1313488 (D. Me. Apr. 17, 2012) (discussing *Kaylor v. Astrue*, No. 2:10-CV-33-GZS, 2010 WL 5776375, at *3 (Dec. 30, 2010), *recommended decision adopted*, 2011 WL 487844 (D. Me. Feb. 7, 2011)). If an ALJ relies on the RFC opinion of an expert who accounted for a claimant's obesity, the claimant must demonstrate that the ALJ erred by failing to consider a specific additional limitation imposed or impacted by obesity. *Mathieu v. Colvin*, No. 1:13-CV-239-JDL,

2014 WL 4055515, at *4 (D. Me. Aug. 15, 2014).[2]

Here, the ALJ did not note Dr. George Stockwell's opinion that obesity impacts Plaintiff's ability to ambulate. The ALJ, however, considered the information in the longitudinal record regarding Plaintiff's obesity and its impact on her functional capacity.[3] A review of the longitudinal record reveals that Plaintiff's treatment providers did not devote attention to obesity either in their notes or in their treatment plans. Moreover, the ALJ specified reasons for assigning little weight to Dr. George Stockwell's source statement, i.e., that his RFC opinion was not consistent with his treatment notes, including that Plaintiff's gait and station are normal. (R. 30.) The ALJ's assessment also finds support in expert opinion. Dr. Ira Stockwell, who examined Plaintiff in December 2015, when Plaintiff's weight was recorded as 159 pounds, found that Plaintiff's ability to stand

---

[2] Relatedly, Magistrate Judge Rich has explained:

> Defendant's administrative rulings include a commitment to evaluate the limiting impact that obesity has on social security claimants. See SSR 02–1p, Titles II and XVI: Evaluation of Obesity (Sept. 12, 2002). The Ruling recognizes that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." 2002 WL 34686281, at *3. The Ruling provides that obesity will be considered in connection with the sequential evaluation process at step 2 and step 3, and also as part of the assessment of a claimant's residual functional capacity and readiness to perform work activity in connection with step 4 and step 5. *Id.* The standards for claim evaluation require the adjudicator to make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *6. Consideration of obesity is not subject to heightened demands that require protracted discussion. "As with any other impairment," the Commissioner promises that adjudicators "will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.

*Keith C. v. Soc. Sec. Admin. Comm'r*, No. 2:17-CV-00436-NT, 2018 WL 4094848, at *3 (Aug. 28, 2018), *recommended decision adopted*, 2018 WL 4355153 (D. Me. Sept. 12, 2018)

[3] A January 2017 treatment note describes Plaintiff's health as fair and suggests she exercises on a regular basis (Ex. 11F, R. 534); the ALJ made note of the entry. (R. 29.)

and walk was not impaired. (Ex. 6F, R. 421.)

While the ALJ arguably should have acknowledged and addressed Dr. George Stockwell's opinion regarding the impact of Plaintiff's obesity, Dr. Stockwell's opinion does not compel a finding that Plaintiff's obesity constitutes a severe impairment. The longitudinal record, which reflects that Plaintiff's obesity was not a focus of treatment or of any limitations on Plaintiff's functional ability, and the opinion of Dr. Ira Stockwell, support the ALJ's determination that Plaintiff's obesity is not a severe impairment.

*3. PTSD*

The ALJ discussed at step 2 why she concluded that Plaintiff's "depression and anxiety … do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere," including the fact that the Wellbutrin Plaintiff is prescribed ameliorates her symptoms. (R. 25.) The ALJ recognized that the record included other mental health diagnoses, but the ALJ found that the symptoms were "best described as anxiety and depression." (*Id.*) In addition, the ALJ noted Plaintiff's contention that she suffers from post-traumatic stress disorder (PTSD), but the ALJ determined that the impairment was not diagnosed by an acceptable medical source. (R. 26.) The ALJ also reasoned that even if PTSD is recognized as a diagnosis, any impairment would not be severe. (*Id.*) The ALJ's interpretation is in accord with the assessment of Susan Lichtman, Ph.D. (Ex. 3A, R. 103-4) and Thomas Yared, M.D. (Ex. 5A, R. 121-22), who considered the record on behalf of Disability Determination Services. Additionally, Kerry Drach, Psy.D., who performed a consultative examination in June

2016, concluded that PTSD appeared to be a valid diagnosis,[4] but in his source statement offered nothing to suggest the presence of severe mental limitations, or how any limitations might manifest in the work environment.[5] (Ex. 7F, R. 427.)

As part of her challenge to the ALJ's decision, Plaintiff points to a July 2014 note signed by George Higgins, M.D., of Maine Medical Center, which note reflects that Plaintiff complained of dizziness and chest heaviness, and she reported that her physical symptoms made her anxious and caused a panic attack. (Ex. 10F, R. 500; *see also* Hr'g Tr., R. 54, 61.) Plaintiff also cites treatment progress notes provided by NP Chase. (Statement of Errors at 11-12 n.10.) As the ALJ observed, the reported symptoms overlap with the non-severe mental impairments of anxiety and depression. (R. 26.)

Plaintiff's contention that the ALJ judged matters entrusted to experts because the "B criteria" associated with Defendant's method for evaluating psychiatric symptoms was amended during the pendency of Plaintiff's claim is also unavailing. The record reflects that the ALJ assessed the evidence, including the medical evidence under the revised "B" criteria. (R. 25-26.) While the "B" criteria were revised, the experts' assessment under the prior criteria is relevant and an ALJ can rely on the experts' opinions when assessing a claim governed by the new criteria. In this case, the ALJ properly discussed the evidence, including the medical expert's findings in the context of the new criteria. The ALJ's

---

[4] Dr. Drach identified the traumatic events and found they occurred in 2006 or 2008. (R. 425.) Plaintiff alleges disability onset in 2014. For several years after the traumatic events, Plaintiff performed substantial gainful activity.

[5] Dr. Hull, the referral pain management physician, also included PTSD in his assessment of Plaintiff's existing conditions. (Ex. 9F, R. 445.) While it is not apparent that he performed an examination to make the diagnosis, PTSD did not appear to factor in his treatment plan.

11

reasoning and findings are supportable.

## B. Step 3 and RFC – Bilateral Upper Extremities

Plaintiff contends the ALJ did not adequately consider whether her tendinitis and fibromyalgia equal a listing; she maintains that the impairment in her bilateral upper extremities prevents her from performing fine and gross movements effectively. (Statement of Errors at 7-8, 14, citing, but not discussing Listings 1.02B (musculoskeletal – major dysfunction of joint(s)), 11.14 (neurological disorders – peripheral neuropathy), and 14.09 (immune system disorders – inflammatory arthritis).)

At step 3 of the sequential evaluation process, the Commissioner considers whether a claimant's impairments meet or equal the criteria set forth in the "listings" found in appendix 1 of the disability regulations. 20 C.F.R. § 404.1520(a)(iii). If so, the claimant is deemed disabled without any further analysis of the claimant's residual functional capacity to perform past relevant work or other work in the national economy. *Id.* § 404.1520(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) ("The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity."); 20 C.F.R. § 404.1525(a) (same). "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). However, if a claimant has an impairment identified in a listing, but the impairment does not meet one or more of the criteria of the listing, the claimant may still be found disabled at step 3 if the claimant has "other findings related to [her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. §

12

404.1526(b)(1)(ii) (defining "medical equivalence").

Plaintiff has not identified the medical findings of record that would support a determination that her impairments equal any of the listings she identified. *DuBois v. Berryhill*, No. 1:17-CV-00076-JDL, 2017 WL 6000340, at *7 n.3 (Dec. 3, 2017), *recommended decision adopted*, 2018 WL 1091967 (D. Me. Feb. 28, 2018) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")). Furthermore, to the extent Plaintiff contends she is unable to engage in fine or gross motor skills with her upper extremities, the record does not support Plaintiff's claim. For instance, Dr. Ira Stockwell, in connection with his consultative examination, observed that Plaintiff "had no difficulty at all manipulating her fairly large pocketbook digging through the pocketbook and getting me the identification card … out of a folder. So her hand manipulatory ability was excellent and she did it without any pain or apparent discomfort." (Ex. 6F, R. 419.) He also opined that Plaintiff's ability to lift and carry with her upper extremities "could be limited by her fibromyalgia and chronic upper extremity pain," which does not suggest an inability to perform gross motor skills. (R. 421.)

Plaintiff further argues that in formulating Plaintiff's RFC, the ALJ judged matters entrusted to experts when she found a capacity for light-exertion work. (Statement of Errors 14-15.) The ALJ reviewed the longitudinal record at some length, and she noted entries that were suggestive of a greater capacity than Plaintiff alleges. Such a review and evaluation do not constitute an impermissible assessment of matters entrusted to experts. In fact, as part of her evaluation, the ALJ cited supportive expert opinion, including the

DDS consultants' assessments and observations made by Dr. Ira Stockwell, both of which raise legitimate questions about Plaintiff's report of extreme dysfunction. (R. 28-29.)

### C. Step 4 – Past Relevant Work

After leaving her position as a manager of a Subway restaurant, which included some medium lifting (Hr'g Tr., R. 47-48, 53, 62), Plaintiff worked for a time as a reservations agent. (R. 46-47, 65.) Plaintiff argues the ALJ erred when she considered the reservations agent job as past relevant work because she did not perform the job until after her alleged onset date and she did not earn sufficient income for the work to be considered material for purposes of step 4. (Statement of Errors at 15 – 16.) Defendant does not disagree with Plaintiff's argument. The step 4 error, however, is immaterial if the ALJ's alternative step 5 finding is supportable. As explained herein, the ALJ's Step 5 finding is supportable.

### D. Failure to Call Medical Expert at Hearing

Plaintiff contends she was deprived of the opportunity to confront adverse opinion evidence. (Statement of Errors at 16-17.) Plaintiff argues she has a constitutional right to have the Commissioner call a medical expert at her hearing, to permit her counsel to cross examine the expert "as to any expressed opinions that were adverse to the interests of the Plaintiff." (*Id.* at 17.) Plaintiff cites no legal authority for her argument and her argument is otherwise unpersuasive.

Relatedly, Plaintiff argues that the DDS opinions are effectively irrelevant by the passage of time and the progression of her disease. Where the non-examining agency expert has reviewed the material evidence contained in the medical record, and the ALJ

14

has rejected the relevant opinion(s) of the treating source(s) for "good reason," the opinions of the agency experts about the claimant's RFC can constitute substantial evidence of a claimant's RFC. *Alazawy v. Colvin*, No. 2:16-cv-240-JHR, at *6 – 7 (D. Me. Dec. 26, 2016).

> This Court has observed:
>
> There is no hard and fast rule requiring renewed evaluation by a consulting expert every time a disability claimant experiences new medical events or obtains new diagnoses in the interval between the initial DDS consultant's RFC assessment and the date of the administrative hearing. Particularly where pain is concerned, an Administrative Law Judge has the unenviable duty to make a credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4); SSR 96–7p, and the evidence contained in new medical records may, in some cases, simply dovetail with the credibility determination. Where the dividing line exists is difficult to determine and will depend on the particular facts of a case.

*Bachelder v. SSA Comm'r*, No. 1:09-CV-436-JAW, 2010 WL 2942689, at *6 (July 19, 2010), *recommended decision adopted*, 2010 WL 3155151 (D. Me. Aug. 9, 2010). *See also Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." (citations and internal quotation marks omitted)).

The initial and reconsideration opinions in support of the ALJ's RFC findings were issued in June 2016 and October 2016, respectively. (Ex. 5A.) Plaintiff's hearing before the ALJ was in October 2017. (R. 22, 38.) The record does not reflect significant

developments in Plaintiff's medical condition or treatment to render the opinions of the consultants irrelevant or insufficient.

### E. Step 5 – Substantial Gainful Activity

Plaintiff's challenge to the alternative Step 5 findings is in part a reiteration of her arguments regarding the ALJ's RFC determination. As explained above, the RFC finding is supported by substantial evidence. Similarly, the ALJ's finding of the other occupations Plaintiff could perform is supportable. Accordingly, even if, as Plaintiff argues, the ALJ erred in her determination regarding Plaintiff's prior work, any error would be harmless given the ALJ's alternative step 5 finding that Plaintiff could perform other jobs which exist in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

Dated this 24th day of April, 2019.

/s/ John C. Nivison
U.S. Magistrate Judge